207 A.2d 39.

ROSE MALATT *vs.* UNITED TRANSIT COMPANY.

ELI MALATT *vs.* UNITED TRANSIT COMPANY.

FEBRUARY 12, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

264

POWERS, J.  These are two actions of case for negligence brought by a woman passenger to recover damages for personal injuries allegedly resulting from the negligent operation of the defendant's bus, and by her husband per quod. The cases were consolidated for trial to a superior court justice sitting with a jury and resulted in verdicts of $15,000 for the wife and $2,000 for the husband.  They are before us on the defendant's bills of exceptions to the denial of its motions that the cases be passed and for new trials.

We shall consider the cases as though only that of Rose Malatt were before us, but our decision therein will be applicable to the other as well.

The record establishes that at or about 9:35 on the morning of September 10, 1960, Rose Malatt, hereinafter called the plaintiff, boarded a bus operated by defendant's servant in the village of Manville where she resided to ride to the city of Woonsocket where she was employed.

She testified that the two-lane highway over which the bus traveled was in good condition to the city line, but

that there it became very rough and had numerous pot-holes. She further testified that the bus traveled at about forty miles an hour over the unimpaired stretch of highway; that the speed was not slackened when the rough portion was reached; and that because of the condition of the high-way the speed of the bus caused it to bounce her and other passengers in their seats. It is undisputed that after travel-ing over this rough portion for some distance there oc-curred what plaintiff described as "this awful crash—this awful loud noise * * *." She added that the bus there-after immediately picked up speed. On cross-examination, she stated that the increased speed probably reached sixty miles an hour or more. In any event, it is undisputed that following this incident the bus veered to the left and came to a stop off the highway within a few feet of a pri-vate dwelling.

The plaintiff also testified that at the time of "this aw-ful crash" she was thrown forward in her seat and struck her chest, left arm and left knee on the seat in front of her. When she arrived in Woonsocket after transferring to an-other bus, she reported for work but testified that her leg was extremely painful and swelling steadily. Thereafter, she was treated by three doctors, underwent two opera-tions, lost sixty weeks of employment and continued to suffer pain.

Her testimony as to the condition of the road, the speed of the bus before the incident and the crossing of the high-way to private property was substantially corroborated by two other passengers, Fabietta Raymond and Violet De-Courcy. The latter also agreed that the bus seemed to pick up speed after the "crash" but she did not indicate a specific rate of increase. All three women testified that a male passenger in the rear of the bus called out at one time, " 'Take it easy. You're going too fast.' "

It appears that at some time Mrs. Raymond became nervous, rose from her seat and was thrown to the floor.

She, as well as plaintiff and Miss DeCourcy, who helped Mrs. Raymond to her feet, agreed that this incident occurred just prior to the crash or bump which caused the bus to go out of control.

There appear to have been but two male passengers. Both testified for defendant that the bus was traveling at a reasonable rate of speed, but for several reasons their evidence could hardly have been persuasive.

The bus driver, however, testified in some detail. He stated that he had been operating for defendant for years and was thoroughly familiar with the highway on which the incident occurred; that he had been driving over it twice a day for seven months; that on the trip in question he was operating at some twenty or twenty-five miles an hour; that there was a spot in the highway with which he was familiar where a pothole of four to five inches in depth was immediately followed by an asphalt mound of six to eight inches; that this mound was a covering over a water main; and that he reduced the speed of the bus to fifteen miles an hour but that the resulting bump snapped a torsion rod and shackle causing the steering apparatus to go out of control.

The deposition of Wallace Gregory, an adjuster for defendant, was also received in evidence. He had taken a statement from plaintiff several days after the accident in which she said that the bus was traveling "slowly." The plaintiff had signed this statement and when questioned in cross-examination about her apparent contradiction insisted that she would not have signed it except that the adjuster had assured her that everything would be all right and that he would take care of it. The thrust of the deposition was to rebut plaintiff's explanation of her contradictory testimony.

The plaintiff's declaration contains several counts but, on the state of the evidence adduced, the trial justice submitted the case to the jury only on the second count which is

as follows: "And it then and there was the duty of the defendant to exercise towards the plaintiff the highest degree of care and foresight consistent with the orderly conduct of its business with respect to all matters under its control. Yet said defendant, by its employee, agent or servant did negligently operate at an unreasonable rate of speed under the circumstances of the conditions of the street so that said bus left the public highway and went upon private property."

The defendant is pressing only two of its exceptions. The first exception is to the denial of defendant's motion to pass the case after plaintiff testified that defendant's adjuster had made the statement, " 'Don't worry about it. I'll take care of this. Everything will be taken care of.' "

The defendant contends that plaintiff thus repeated in the presence of the jury an offer of compromise or settlement which required the trial justice to take the case from the jury, citing *Vingi* v. *Trillo*, 77 R. I. 55. That case is not exactly in point with the circumstances of the case at bar. There, this court held that an offer of compromise is not ordinarily admissible, but made an exception where it was brought out in cross-examination designed to contradict the witness' testimony in chief. Here, plaintiff was confronted with a statement signed by her but prepared by defendant's adjuster. In it she purportedly stated that the bus was going slowly, whereas in direct examination she had testified very much to the contrary.

On redirect examination her counsel sought an explanation for her signing the statement when it contained an allegation of fact contrary to her testimony. She answered in the quoted language which defendant contends constituted an offer of compromise. The trial justice did not so regard it and, we think, correctly so. It seems to us, as it obviously did to plaintiff, that the adjuster's remarks were nothing more than an assurance that he would correct the

statement so as to conform with plaintiff's insistence that the bus was traveling too fast for the condition of the highway. Thus assured, plaintiff was testifying, she signed the statement in question. This exception is overruled.

The defendant's remaining exception is to the denial of its motion for a new trial. It contends in effect that the verdict was against the fair preponderance of the evidence and should have been set aside as not truly responding to the real merits of the controversy, citing *Humes* v. *Schaller*, 39 R. I. 519.

The testimony of plaintiff and her witnesses, it argues, is inherently improbable and should have been disregarded. *Wilcox* v. *Rhode Island Co.*, 29 R. I. 292. Indeed, defendant points out, the trial justice observed that plaintiff's testimony was incredible and that even she probably did not believe it. Since that of her witnesses was of similar import, it follows, defendant asserts, that it was likewise without probative value.

The trial justice's decision discloses, however, that he gave no weight to plaintiff's testimony and very little to that of the other women passengers. He frankly acknowledged that if plaintiff's verdict rested solely on her testimony and that of her witnesses, there would be a serious question as to whether it should stand. He found, however, that the testimony of the bus driver was such as to justify the jury in reaching their verdict, considering that the case was submitted to them on a question of whether the defendant's servant had exercised "the highest degree of care and foresight consistent with the orderly conduct of its business with respect to all matters under its control."

The duty of the trial justice in passing on a motion for a new trial has been repeatedly set forth in numerous decisions of this court. In the case at bar he passed on the credibility of the witnesses, the weight of the evidence and, exercising his independent judgment, neither overlooked nor

misconceived any material evidence. In such circumstances his decision will not be disturbed by this court. *Cottrell* v. *Lally*, 94 R. I. 485, 182 A.2d 302.

In each case the defendant's exceptions briefed and argued are overruled and each case is remitted to the superior court for entry of judgment on the verdict.

*Irving I. Zimmerman, Coleman B. Zimmerman,* for plaintiffs.

*McGee and Doorley, Frank J. McGee,* for defendant.